United States District Court
Southern District of Texas
**ENTERED**
June 25, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| POWER MANAGEMENT CONTROLS, INC., | § § § § § § § § § § § | |
| Plaintiff. | | |
| VS. | | CIVIL ACTION NO. 3:20-CV-00154 |
| 5NICKLES, INC., ET AL., | | |
| Defendants. | | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff's Motion to Remand is pending before me.  *See* Dkt. 3.  This motion represents the second time in a year that I have been asked to decide whether this case has been properly removed from the 56th Judicial District Court of Galveston County, Texas, to federal court here in Galveston.  An initial, cursory glance at the parties' briefing reminds me of linguist Yogi Berra's famous saying: "It's déjà vu all over again."[1]  A closer examination of the pleadings, however, reveals that this time I am confronted with an entirely new series of legal issues concerning the removal and remand process.

---

[1] In addition to having a way with words, Berra was also an 18-time All-Star catcher for the New York Yankees and a celebrated member of the Baseball Hall of Fame.  Berra reportedly made the "déjà vu" remark to the media after watching slugging teammates Mickey Mantle and Roger Maris hit back-to-back home runs for the umpteenth time.  For the record, my favorite all-time Yogi-isms are as follows: (1) "Ninety percent of the game is physical, and the other half is mental;" (2) "When you come to a fork in the road . . . take it;" (3) "Nobody goes there anymore.  It's too crowded;" (4) "Never answer an anonymous letter;" and (5) "You better cut the pizza in four pieces because I'm not hungry enough to eat six pieces."

After thoroughly reviewing the Motion to Remand, relevant case law, and various briefings supporting and opposing removal, I recommend that the Motion to Remand be **GRANTED**. Let me explain why.

## BACKGROUND

Plaintiff Power Management Controls, Inc. ("PMC") originally filed this lawsuit in August 2018 against 5Nickles, Inc. ("5Nickles"), Andrew Lesnick, and John Lesnick. According to Plaintiff's Original Petition, these defendants, while under contract with PMC, secretly siphoned PMC's funds into a 5Nickles bank account. In the initial lawsuit, PMC brought claims for breach of contract, unjust enrichment/money had and received, and conversion.

In July 2019, PMC filed its First Amended Petition, adding several new causes of action and three additional defendants: Alice Lesnick, Scott Cline, and E3P Solutions, LLC. Alice Lesnick removed this action based on diversity jurisdiction, but I remanded the case to state court, finding the removal to be procedurally defective because not all defendants timely consented to the removal. *See Power Mgmt. Controls, Inc. v. 5Nickles, Inc.*, No. 3:19-CV-00289, 2019 WL 5685425, at *4 (S.D. Tex. Oct. 16, 2019). Discovery proceeded for approximately six months while the case was back in state court.

On April 20, 2020, PMC filed its Third Amended Petition, adding two new diverse defendants—L5 Group, Inc. ("L5 Group") and E3 Pumping Solutions, LLC ("E3 Pumping Solutions"). The Third Amended Petition seeks more than $1 million in damages. On May 8, 2020, approximately 21 months after the lawsuit's first filing, L5 Group removed the case to this Court. L5 Group contends that federal jurisdiction is proper because there

is complete diversity among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), 1441(a). PMC seeks remand of this action on the grounds that L5 Group has violated the one-year deadline for removal of diversity cases.

## ANALYSIS

A defendant may generally remove a state court civil action if the federal court has original jurisdiction over the action. *See id.* § 1441(a). Federal courts have original jurisdiction where a question of federal law is involved or where the lawsuit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See id.* §§ 1331, 1332(a).

"The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). *See also Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) ("[T]he removing party bears the burden of . . . show[ing] that federal jurisdiction exists."). Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). As a result, federal removal statutes are to be strictly construed against removal, and all ambiguities or doubts are resolved in favor of remand. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

The procedure for removing an action from state court to federal district court is governed by 28 U.S.C. § 1446. Those portions of Section 1446 which address the timeliness of removal at issue in this case are as follows:

3

> **(b)Requirements; generally.—(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> \*\*\*
>
> **(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.
>
> **(c) Requirements; removal based on diversity of citizenship.—(1)** A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

28 U.S.C. § 1446.

To summarize, Section 1446(b)(1) provides that if an initial pleading sets forth a removable claim, a defendant must remove the case to federal court within 30 days of service. However, if the case is not originally removable, but it later becomes removable, a defendant must remove the case within 30 days of being put on notice that the case has become removable. *See id.* § 1446(b)(3). Section 1446(c)(1) contains a further limitation on removing those cases in which the initial state court lawsuit was not removable: such a case may not be removed more than one year after the commencement of the state court lawsuit unless the plaintiff "has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c)(1). This rule is commonly referred to as the "one-year

bar."[2] *See Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 426 n.8 (5th Cir. 2003). "When it comes to bad faith . . . the question is what motivated the plaintiff *in the past*—that is, whether the plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'" *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293 (5th Cir. 2019) (quoting 28 U.S.C. § 1446(c)(1)).

Importantly, the one-year bar in Section 1446(c)(1) does not apply to cases that were initially removable from state court. *See Johnson v. Heublein Inc.*, 227 F.3d 236, 241 (5th Cir. 2000) (holding one-year limitation for removal of diversity cases applies only to state court cases that are not initially removeable); *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 886 (5th Cir. 1998) (same); *Jackson v. Alsco, Inc.*, No. H-19-1101, 2019 WL 2250942, at *2 (S.D. Tex. May 24, 2019) (same).[3]

For purposes of the instant case, the important takeaway from the statutory scheme boils down to this: if the state court lawsuit was initially removable, there is no one-year bar and L5 Group's removal is timely. If, on the other hand, the state court lawsuit was

---

[2] In 2011, Congress amended the removal statute and expressly added the bad-faith exception to the one-year bar.

[3] To me, the reasoning behind this rule is perplexing. Consider two hypothetical cases. In the first case, the newly-added defendant decides to remove a case that was initially removable at the time of filing. In the second case, the newly-added defendant decides to remove a case that was not initially removable at the time of filing. If the purpose behind the one-year bar is to "reduc[e] the opportunity for removal after substantial progress has been made in state court," it is unclear to me why the newly-added defendant in the first case is permitted to remove the case to federal court and the newly-added defendant in the second case is not allowed to remove the case to federal court. *Deshotel*, 142 F.3d at 886 (quoting H.R. REP. NO. 100–889 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6031–6034). Although I do not see the logic in this rule, the Fifth Circuit has spoken and I am obligated to follow Fifth Circuit precedent, which I will do.

not initially removable, the one-year bar applies and I must remand this case unless L5 Group shows that PMC acted in bad faith to prevent removal.[4]

Therefore, to resolve the timeliness issue, I must first determine whether the original state court lawsuit filed in Galveston County District Court was removable at the time it was filed. Defendants L5 Group, Scott Cline, and E3 Pumping Solutions[5] all argue that diversity jurisdiction existed at the time PMC filed the state court lawsuit. Because the parties are in agreement that there was complete diversity at the outset of the case, the dispute centers on whether the amount in controversy in the initial lawsuit exceeded $75,000.

"Under Fifth Circuit law, a removing defendant's burden of showing that the amount in controversy is sufficient to support federal jurisdiction differs depending on

---

[4] L5 Group asserts that, even if the state court case was not initially removable, the one-year bar is inapplicable because a newly-added defendant always has the right to remove a lawsuit to federal court. This is simply not the law. District courts across this great nation have uniformly rejected L5 Group's argument. *See, e.g., Holleman v. Golden Nugget Lake Charles, LLC*, No. 2:19-00477, 2019 WL 5855770, at *4 (W.D. La. Nov. 6, 2019) ("The jurisprudence and the legislative history indicate that the one-year limitation of 28 U.S.C. § 1446(c)(1) starts to run when the original state court petition is filed and does not reset or re-commence with the additional [sic] of new defendants."); *In re Pikeville Sch. Bus Collision Cases*, No. 11-158-ART, 2011 WL 6752564, at *5 (E.D. Ky. Dec. 23, 2011) (Congress surely could have—but did not—"distinguish between defendants named in the original complaint and later-added defendants" in setting removal time limits.); *Loyola Univ. New Orleans v. MAPP Const. Inc.*, No. 10-934, 2010 WL 11538698, at *3 (E.D. La. May 6, 2010) ("In cases not initially removable, the one-year limitation applies even if new defendants are added or new claims are asserted."); *Howell v. St. Paul Fire & Marine Ins. Co.*, 955 F. Supp. 660, 663 (M.D. La. 1997) ("Congress specifically put an overall time limit when a party seeks to remove an action pursuant to" the diversity statute, and that time limit "applies even if new defendants are added or new claims are asserted.").

[5] Although L5 Group is the party that removed the state court action, Scott Cline and E3 Pumping Solutions have filed their own response in opposition to PMC's Motion to Remand. For the sake of clarity, I will refer to L5 Group, Scott Cline, and E3 Pumping Solutions, collectively, as the "Removing Defendants."

whether the plaintiff's [petition] alleges a specific amount of monetary damages." *Premium Plastics v. Seattle Specialty Ins. Servs., Inc.*, No. H-10-3960, 2011 WL 11199, at *1 (S.D. Tex. Jan. 3, 2011). "Where the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy, that amount controls if made in good faith." *Allen*, 63 F.3d at 1335. "[I]f a plaintiff pleads damages less than the jurisdiction amount," this figure will also generally control and bar removal. *Id.* "Thus, in the typical diversity case, the plaintiff remains the master of his complaint." *Id.*

When, like here, the plaintiff has alleged an indeterminate amount of damages, the Fifth Circuit requires that "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000). A defendant satisfies this burden either by (1) showing that it is facially apparent that the plaintiff's claims likely exceed $75,000, or (2) setting forth "summary judgment type evidence" of facts in controversy that support a finding of the requisite amount. *Manguno*, 276 F.3d at 723. It is appropriate for the court to consider summary-judgment-type evidence relevant to the amount in controversy at the time of removal only if "the facially apparent test is not met." *Allen*, 63 F.3d at 1336.

"[W]here the district court is making the 'facially apparent' determination, the proper procedure is to look only at the face of the [state court petition] and ask whether the amount in controversy was likely to exceed [$75,000]." *Id.* In examining the state court petition, I may "make common-sense inferences about the amount put at stake by the injuries the plaintiff[] claim[s]." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015). Take a few examples. Assume Coca-Cola files a state court lawsuit, alleging

7

that a competitor stole its secret recipe. Although Coca-Cola claims an unspecified amount for "loss of world-wide sales," it does not take a rocket scientist to conclude that the amount in controversy exceeds $75,000. Likewise, if the National Football League filed a state court lawsuit claiming to have suffered significant damages due to losing its nationwide television contract, it is not hard to make the logical leap that such a lawsuit has put at least $75,000 at issue.

This case presents a very different situation. The face of PMC's Original Petition does not expressly state the total amount sought, and I am unable to conclude after carefully reviewing the Original Petition that the amount in controversy clearly exceeds $75,000. In the original state court lawsuit, there is a breach of contract action stating that PMC "has suffered actual damages in the amount of at least $25,411.00." Dkt. 10-2 at 5. There is also a separate unjust enrichment/money had and received claim brought as an alternative to the breach of contract claim, seeking the same damages as the breach of contract claim. Finally, there is a conversion claim asserting that the original defendants to the lawsuit failed to return a sum of money to which PMC was entitled. The Original Petition, however, does not specify how much money was allegedly converted besides noting that the amount is less than $20,026.36.[6] Even if I went ahead and blithely assumed that the amount allegedly converted equaled $20,026.36, the total damages specified in the Original

---

[6] The Original Petition contends that the original defendants sold $20,026.36 of PMC's products, returned an unspecified amount to PMC, and then unlawfully converted the remaining funds. The actual amount of these remaining funds is unclear from the Original Petition.

8

Petition would only amount to $45,437.26, falling approximately $30,000 short of the all-important $75,000 threshold for diversity jurisdiction to attach.

Not so fast, say the Removing Defendants. They assert that common sense dictates a conclusion that PMC's Original Petition seeks recovery in excess of $75,000 because PMC requested 12 separate categories of damages. Specifically, the Removing Defendants point to the following paragraph from the Original Petition:

> PMC[] requests a final judgment awarding its actual damages, expectation damages, benefit-of-the-bargain damages, out-of-pocket damages, special damages, incidental damages, consequential damages, lost profits, pre-judgment interest, post-judgment interest, and/or attorney's fees to the maximum extent provided by law.

*Id.* The problem with the Removing Defendants' position is that I cannot discern from the requested relief that the actual amount in controversy exceeds $75,000. Remember, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [the jurisdictional amount]." *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). This preponderance standard "forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). Assuming that PMC is entitled to all the types of damages it asks for in the Original Petition, can I really say with any confidence that the amount in controversy is definitely more than $75,000? No, I can't. After reading the Original Petition, I am unable to intelligently comment on how much money is actually sought by PMC for this laundry list of damages. Any estimate from me would be nothing more than a haphazard guess. Importantly, as PMC reminded me repeatedly during oral argument, "if the amount in controversy remains ambiguous, the

9

Court must resolve that ambiguity in favor of remand." *Solares v. Allstate Vehicle and Prop. Ins. Co.*, No. 5:19-CV-00027, 2019 WL 3253072, at *3 (S.D. Tex. June 11, 2019). *See also Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007) ("[A]ny doubt about the propriety of removal must be resolved in favor of remand.").

Although I cannot glean from the Original Petition how much was really at issue when this lawsuit was filed, PMC invites me to take a look at the demand letter it sent to the original defendants in August 2018. That letter, sent just a few days after the state court lawsuit was filed, demanded a total of $30,411.00 (representing $25,411.00 in actual damages and $5,000 in incurred attorney's fees) from the original defendants. To state the painfully obvious, this pre-removal demand letter is pretty compelling evidence that PMC was not seeking a recovery in excess of $75,000 in its initial pleading in the case. *See Fairchild v. State Farm Mut. Auto. Ins. Co.*, 907 F. Supp. 969, 971 (M.D. La. 1995) (finding that a pre-removal settlement demand letter "is valuable evidence to indicate the amount in controversy at the time of removal").

In an attempt to stave off remand, the Removing Defendants make several additional arguments. To start, the Removing Defendants aver that PMC's request for exemplary damages is more than sufficient to increase the amount in controversy over $75,000. I am not convinced. Although PMC requests exemplary damages on the conversion cause of action, it is well-settled that a request for punitive damages does not automatically make a case removable. *See Hot-Hed, Inc. v. Safe House Habitats, Ltd.*, No. H-06-1509, 2007 WL 556862, at *2 (S.D. Tex. Feb. 12, 2007) ("[T]he mere fact that exemplary or punitive damages may be recoverable does not establish that the amount in controversy is met.");

10

*Sims v. AT & T Corp.*, No. 04-CV-1972-D, 2004 WL 2964983, at *5 (N.D. Tex. Dec. 22, 2004) (remanding because "[i]t is not facially apparent that [plaintiff's] claims for economic damages, attorney's fees, and punitive damages—individually or considered together—involve in excess of $75,000"). Where, as here, an unspecified amount of punitive damages is pled in the state court lawsuit, the Removing Defendants have to carry their burden of establishing that the punitive damage award will unquestionably exceed the requisite jurisdictional threshold of $75,000. They do not meet that high hurdle. To posit any amount of recovery for punitive damages after reading the Original Petition would be nothing more than pure speculation. I will not follow that path. I cannot reasonably put a figure on the amount of punitive damages to be awarded for conversion when, as noted above, the Original Petition does not even set forth an amount sought for the underlying conversion claim.

The Removing Defendants next latch onto the statement in the Original Petition that PMC's damages are "$100,000 or less" and then, in a bit of word trickery that would make Harry Houdini and David Copperfield proud, magically claim "[w]ithout any additional analysis, that amount is more than $75,000." Dkt. 7 at 5. This argument goes nowhere. Texas Rule of Civil Procedure 47 requires a plaintiff to plead within one of five enumerated ranges of damages in the initial petition:

> (1) only monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees; or
> (2) monetary relief of $100,000 or less and non-monetary relief; or
> (3) monetary relief of over $100,000 but not more than $200,000; or
> (4) monetary relief of over $200,000 but not more than $1,000,000; or
> (5) monetary relief over $1,000,000

11

TEX. R. CIV. P. 47. The lowest category a plaintiff is permitted to select is $100,000 or less. *See Solares*, 2019 WL 3253072, at *1 ("A state-court plaintiff must plead into the '$100,000 or less' bracket regardless of whether the true figure she seeks is $9,000 or $99,000."). Accordingly, "an allegation that a party is seeking 'monetary relief of $100,000 or less' is not tantamount to a claim that the party is seeking 'at least $75,000, exclusive of interest and costs.'" *Wilson v. JPMorgan Chase Bank, N.A.,* No. 4:13–CV–877–A, 2013 WL 5952576, at *3 (N.D. Tex. Nov. 7, 2013). *See also Jackson v. Bank of Am., N.A.*, No. 3:13–CV–4093–L, 2014 WL 2616872, *3 (N.D. Tex. June 12, 2014) ("[T]he paragraph in Plaintiff's complaint stating that he 'seeks monetary relief of $100,000 or less and non-monetary relief' merely conforms to Texas Rule of Civil Procedure 47, which requires plaintiffs to select one of five prescribed claims for relief and does not represent a request for a specific dollar amount of damages."). In short, PMC's statement in the Original Petition that it is seeking less than $100,000 provides no guidance or assistance to determine whether the amount in controversy in the Original Petition exceeds $75,000.

The Removing Defendants make much of the fact that PMC seeks more than $1 million in damages in the Third Amended Petition. The Removing Defendants also focus on discovery responses provided by PMC well after the lawsuit was filed that describe damages above the $75,000 threshold. This evidence, according to the Removing Defendants, is proof positive that the real amount in dispute in the Original Petition far exceeds the $75,000 required to confer diversity jurisdiction. Although it is tantalizing to look at the Second Amended Petition, the Third Amended Petition, or recently filed

discovery responses, the question before me presently is whether the initial pleading in the case was removable. Focusing on the Original Petition, I conclude that the Removing Defendants have failed to establish by a preponderance of the evidence that the amount in controversy in the Original Petition exceeds $75,000.[7]

Because this case was not initially removable, the one-year bar set forth in Section 1446(c)(1) applies. As noted above, PMC's Original Petition was filed on August 24, 2018, and L5 Group's notice of removal was filed on May 8, 2020, more than a year and a half after the lawsuit was commenced in state court. Thus, absent a finding of bad faith on the part of PMC, the one-year bar requires remand.

As a final straw, L5 Group argues that the one-year limitation on removal does not apply here because PMC acted in bad faith in order to prevent defendants from removing the action. This argument is premised on the idea that PMC knew its damages exceeded $1 million back when the lawsuit was originally filed, but waited more than a year to disclose this fact to avoid federal jurisdiction.

L5 Group's bad faith contentions quickly unravel upon a close examination. PMC convincingly argues that it originally thought this case was worth well below the $75,000 target for federal jurisdiction. Only after a whistleblower testified in July 2019 that the

---

[7] The Removing Defendants also claim that PMC has incurred, to date, approximately $130,000 in attorney's fees, thus exceeding the $75,000 jurisdictional threshold. Once again, the Removing Defendants make the mistake of looking at the wrong point in time, focusing on events that transpired after the case progressed for several years. The relevant question is whether it was facially apparent at the time the lawsuit was filed that the recovery sought exceeded $75,000. I am unwilling to go out on a limb and assume that the recovery of attorney's fees at the outset of the case would rise to the level of satisfying the amount-in-controversy requirement.

defendants had stolen PMC's trade secrets did PMC realize the scale of the alleged misconduct at issue. Having learned this new information, PMC immediately filed its First Amended Petition, joining two additional parties and adding causes of action for breach of fiduciary duty, tortious interference with prospective business relations, unfair competition, conspiracy, and violations of the Texas Uniform Trade Secrets Act. In the First Amended Petition, PMC increased the amount of damages sought to more than $1 million for the very first time. It is impossible to argue that PMC acted in bad faith to avoid federal jurisdiction because the First Amended Petition was undoubtedly removable. There was complete diversity, and the amount-in-controversy far exceeded the $75,000 needed to support federal jurisdiction. Importantly, because PMC filed the amended complaint within a year of the initial lawsuit, the one-year bar posed no impediment to removal. Indeed, one of the defendants tried to remove the case to federal court. The only reason I remanded the case to state court that time around was because of a procedural defect—not all the defendants provided written consent to the removal, as required, within 30 days of the case's removal to federal court. Given this case's history, the bad faith argument falls by the wayside. Without question, PMC did not engage in a naked attempt to avoid federal jurisdiction.

*** 

To recap, I have now determined that (1) the Original Petition, the initial pleading in this case, was not removable; and (2) PMC did not act in bad faith to avoid federal jurisdiction. The net impact of these findings is that Section 1446(c)(1)'s one-year bar

14

prevents L5 Group from removing this action to federal court. Remand is not only appropriate, it is required.

## CONCLUSION AND RECOMMENDATION

For the reasons stated in this Memorandum and Recommendation, I **RECOMMEND** that Plaintiff's Motion to Remand (Dkt. 3) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002—l3. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 25th day of June, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE